## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TIDEWATER INVESTMENT SRL and TIDEWATER CARIBE, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> BOLIVARIAN REPUBLIC OF VENEZUELA, <br><br> Defendant. | C.A. No.: 19-mc-00079-LPS |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER AUTHORIZING THE ISSUANCE OF A WRIT OF ATTACHMENT *FIERI FACIAS* PURSUANT TO 28 U.S.C. § 1610(C)

OF COUNSEL:

Sergio J. Galvis
Joseph E. Neuhaus (*pro hac vice*)
James L. Bromley (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  212-558-4000
Facsimile:  212-558-3588
galviss@sullcrom.com
neuhausj@sullcrom.com
bromleyj@sullcrom.com

Angela N. Ellis (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W. Suite 700
Washington, D.C.  20006-5215
Telephone:  202-956-7500
Facsimile:  202-293-6330
ellisan@sullcrom.com

Dated:  June 1, 2020

A. Thompson Bayliss (#4379)
ABRAMS & BAYLISS
20 Montchanin Road, Suite 200
Wilmington, Delaware  19807
Telephone: 302-778-1000
Facsimile: 302-261-0292
bayliss@abramsbayliss.com

*Attorneys for Defendant Bolivarian Republic of Venezuela*

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ............................................................1

SUMMARY OF THE ARGUMENT ........................................................................2

STATEMENT OF FACTS ....................................................................................3

ARGUMENT .....................................................................................................8

I.  TIDEWATER CANNOT RELY ON THE *CRYSTALLEX ASSET PROCEEDING*
    TO SHOW THAT PDVSA IS VENEZUELA'S ALTER EGO BECAUSE
    CIRCUMSTANCES IN THE REPUBLIC AND ITS RELATIONSHIP WITH
    PDVSA HAVE CHANGED DRAMATICALLY..............................................9

    A.  This Court conducted its *Bancec* analysis in light of circumstances at the
        time of its decision. ................................................................10

    B.  The circumstances in the Republic have changed dramatically since the
        *Crystallex Asset Proceeding* was decided. ...............................11

    C.  Changed circumstances foreclose application of collateral estoppel here. ...........13

    D.  Equitable factors weigh against application of collateral estoppel ......................14

II.  TIDEWATER CANNOT OBTAIN AN ATTACHMENT OF THE SHARES OF
     PDVH OWNED BY PDVSA WITHOUT A SPECIFIC LICENSE FROM OFAC. ........15

    A.  Tidewater's motion raises sanctions issues not litigated in *Crystallex*. ..............15

    B.  Current Venezuelan Sanctions Regulations clearly prohibit attachment of
        PDVSA's shares in PDVH absent a specific license from OFAC ......................18

CONCLUSION...................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*ACL1 Investments Ltd., et al.* v. *Bolivarian Republic of Venezuela*,
   C.A. No. 19-cv-09014 (S.D.N.Y. September 27, 2019) ...........................................................7

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
   C.A. No.: 17-mc-151-LPS (D. Del. May 22, 2020)...........................................................1, 7

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
   333 F. Supp. 3d 380 (D. Del. 2018)................................................................... *passim*

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019)............................................................................ *passim*

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
   2018 WL 4026738 (D. Del. Aug. 23, 2018) .....................................................................4

*Fairchild Semiconductor Corp.* v. *Power Integrations, Inc.*,
   2016 WL 1179244 (D. Del. Mar. 24, 2016) .................................................................9, 10

*First Nat'l City Bank* v. *Banco Para El Comercio Exterior de Cuba*,
   462 U.S. 611 (1983)................................................................................4, 10, 11

*Guaranty Tr. Co.* v. *United States*,
   304 U.S. 126 (1938)..............................................................................................12

*Hawksbill Sea Turtle* v. *FEMA*,
   126 F.3d 461 (3d Cir. 1997),.............................................................................15

*In re Hensley*,
   551 B.R. 792 (E.D. Tex. 2015) ..........................................................................8

*Jiménez* v. *Palacios*,
   2019 WL 3526479 (Del. Ch. Aug. 21, 2019) ...........................................................6, 12

*The Maret*,
   145 F.2d 431 (3d Cir. 1944)................................................................................12

*Nat'l R.R. Passenger Corp.* v. *Pa. Pub. Util. Comm'n*,
   288 F.3d 519 (3d Cir. 2002)...............................................................................14

*Nat'l R.R. Passenger Corp.* v. *Pa. Pub. Util. Comm'n*,
   342 F.3d 242 (3d Cir. 2003)................................................................................9

*OI European Grp. B.V.* v. *Bolivarian Republic of Venezuela*,
  No. 19-mc-290-LPS (Dec. 12, 2019) ................................................................ *passim*

*PenneCom B.V.* v. *Merrill Lynch & Co.*,
  372 F.3d 488 (2d Cir. 2004) ........................................................................... 9

*Red Tree Investments, LLC* v. *Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*,
  C.A. No. 19-cv-02523 (S.D.N.Y. August 26, 2019) ..................................... 7

*Saint-Gobain Performance Plastics Europe* v. *Bolivarian Republic of Venezuela et al*,
  C.A. No. 1:18-cv-01963-LPS (D. Del. Dec. 12, 2018) ................................. 7

*United States* v. *Athlone Indus., Inc.*,
  746 F.2d 977 (3d Cir. 1984) ........................................................................... 8

**Statutes & Other Authorities**

Del. Code Ann. tit. 8 § 169 ............................................................................... 18

31 C.F.R. § 591.202(e) ..................................................................................... 18

31 C.F.R. § 591.310 .......................................................................................... 18

31 C.F.R. § 591.407 .................................................................................... 17, 19

31 C.F.R. § 591.509 .................................................................................... 17, 19

84 Fed. Reg. 64,415 (Nov. 22, 2019) .............................................................. 17

Exec. Order No. 13692, 80 Fed. Reg. 12747 (Mar. 8, 2015) ......................... 16

Exec. Order No. 13808, 82 Fed. Reg. 41155 (Aug. 24, 2017) ....................... 16

Exec. Order No. 13827, 83 Fed. Reg. 12469 (Mar. 19, 2018) ....................... 16

Exec. Order No. 13835, 83 Fed. Reg. 24001 (May 21, 2018) .............. 16, 17, 18

Exec. Order No. 13850, 83 Fed. Reg. 55,243 (Nov. 2, 2018) ............ 5, 16, 17

Exec. Order No. 13884, 84 Fed. Reg. 38843 (Aug. 5, 2019) ................ 5, 17

## NATURE AND STAGE OF PROCEEDINGS

Defendant Bolivarian Republic of Venezuela (the "Republic" or "Venezuela") respectfully submits this memorandum of law in support of its opposition to the motion of Tidewater Investment SRL and Tidewater Caribe S.A. (collectively, "Plaintiffs" or "Tidewater") for an order authorizing the Clerk of this Court to issue a writ of attachment *fieri facias* under the Foreign Sovereign Immunities Act ("FSIA"), the Federal Rules of Civil Procedure and the Delaware Code.[1]

On August 9, 2018, this Court granted a motion by Crystallex International Corp. ("Crystallex") for a writ of attachment *fieri facias* to attach the shares of PDV Holding, Inc. ("PDVH"), which are wholly owned by Petróleos de Venezuela, S.A. ("PDVSA"), the national oil company of Venezuela, *Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 386-87, 426 (D. Del. 2018) (the "*Crystallex Asset Proceeding*").

Relying solely on the Court's conclusions in the *Crystallex Asset Proceeding*, Tidewater now seeks its own writ of attachment.  D.I. 5 at 7-8.  But this Court has already rejected a nearly identical motion brought by a different creditor, OI European Group B.V. ("OI"),[2] and for good reason:  the Court's extensive findings in *Crystallex* were grounded on

---

[1]     On December 16, 2019, before the Republic's time to respond to Plaintiffs' motion expired, the parties filed a joint stipulation to stay this action "until completion of the Supreme Court proceedings in *Crystallex International Corp.* v. *Bolivarian Republic of Venezuela*, C.A. No.: 17- mc-151-LPS, or further order of this or any other Court lifting the stay entered in that action." D.I. 11.  This Court endorsed that stipulation on December 19, 2019.  On May 22, 2020, this Court entered an order lifting the stay of the *Crystallex Asset Proceeding* following the Supreme Court's denial of a writ of certiorari in that action.  *See Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, C.A. No.: 17-mc-151-LPS, D.I. 174 (D. Del. May 22, 2020). The Republic understands that Plaintiffs are currently considering whether to maintain their attachment motion or withdraw it.  The Republic is filing its opposition at this time out of an abundance of caution in view of the lifting of the stay.

[2]     *See* Memorandum Order, *OI European Grp. B.V.* v. *Bolivarian Republic of Venezuela*, No. 19-mc-290-LPS (Dec. 12, 2019), D.I. 26 (the "Dec. 12 Order").

facts that no longer reflect political reality in Venezuela, the Republic's relationship with PDVSA (particularly as it relates to PDVSA's assets in the U.S.), or U.S. foreign policy towards Venezuela, as expressed by the Executive Branch through the Venezuelan sanctions regime.

In rejecting OI's motion for a writ of attachment, this Court made clear that "a creditor like OI must prove, by a preponderance of the evidence, that PDVSA is the alter ego of Venezuela on and as of the pertinent date."  Dec. 12 Order at 17 (D. Del. Dec. 12, 2019). Tidewater has made no attempt to satisfy that burden, and its motion therefore must be denied. *Id.* (rejecting OI's motion for a writ of attachment because it "failed to present any evidence other than attempting to rely on the record created in the *Crystallex Asset Proceeding*").

## SUMMARY OF THE ARGUMENT

1.      Tidewater cannot rely on this Court's findings in the *Crystallex Asset Proceeding* that PDVSA could be deemed to be the "alter ego" of Venezuela because those findings are grounded in stale facts that no longer reflect the current relationship between the Republic and PDVSA.  When the *Crystallex Asset Proceeding* was decided, Venezuela was led by Nicolás Maduro, and it was his regime that was then responsible for the relationship between the Republic and PDVSA.  Now, the United States and over 50 other countries have recognized Juan Guaidó as the Interim President of the Republic, and the interim government he leads (the "Interim Government") has redefined the relationship between PDVSA and the Republic, particularly with respect to PDVSA's assets outside of Venezuela.  As this Court explained in rejecting OI's nearly identical motion, "[t]he question of whether PDVSA can, under present circumstances, be deemed an alter ego of the Republic is not identical to the issue decided in the *Crystallex Asset Proceeding*, and has not been actually litigated and decided on the merits." Dec. 12 Order at 14.

2.      Tidewater cannot obtain a writ of attachment of the shares of PDVH

owned by PDVSA without first obtaining a specific license from the Office of Foreign Assets Control ("OFAC").   Indeed, since the *Crystallex Asset Proceeding* was decided, the United States has imposed sweeping new sanctions that, for the first time, block all property and interests in property of PDVSA in the United States, and OFAC has amended its Venezuelan Sanctions Regulations to clearly prohibit the attachment of the PDVH shares without a specific license.  The effect of these new sanctions was not actually litigated by the parties nor decided by the Court in the *Crystallex Asset Proceeding*, and prevent Tidewater from obtaining the relief it seeks.

## STATEMENT OF FACTS

On February 16, 2010, Tidewater and several of its affiliates commenced arbitration proceedings before the International Centre for Settlement of Investment Disputes ("ICSID") alleging that, in 2009, Venezuela, under Hugo Chávez, expropriated Tidewater's "investments in a venture to provide maritime support services to the oil and gas industry in Venezuela."  D.I. 5 at 2.  Following a March 2015 award in Tidewater's favor by an ICSID tribunal, and a subsequent annulment application by the Republic, on December 27, 2016 an *ad hoc* committee convened by ICSID issued a final award in Tidewater's favor.  *Id.* at 2-3.  On January 25, 2019, the United States District Court for the District of Columbia entered a judgment in favor of Tidewater.  *Id.* at 4.[3]

Separately, on August 14, 2017, Crystallex—which also had won an arbitration award against Venezuela—filed a lawsuit in this Court seeking a writ of attachment *fieri facias* to attach the shares of PDVH.  *Crystallex Asset Proceeding*, 333 F. Supp. 3d at 386-87.  Crystallex was the judgment creditor of Venezuela on an arbitration award arising out of the

---

[3]    For the Court's convenience, we have set forth the key dates relevant to this motion in chart form in an Appendix to this brief.

revocation by the Chávez regime of a contract Crystallex had entered into with the Government of Venezuela in 2002 to develop a gold mine.  PDVSA owns, through PDVH, "100% of the shares of CITGO Petroleum Corp. ('CITGO'), a multi-billion dollar Delaware corporation headquartered in Texas."  *Id.* at 418 n.36.

On August 9, 2018, this Court held that, under *First Nat'l City Bank* v. *Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), PDVSA could be deemed an "alter ego" of Venezuela, which was then controlled by Mr. Maduro.  *Crystallex Asset Proceeding*, 333 F. Supp. 3d at 414.  On August 23, 2018, the Court issued a writ of attachment on the shares of PDVH stock owned by PDVSA.  *Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 2018 WL 4026738, at *1 (D. Del. Aug. 23, 2018).

Subsequently, on January 10, 2019, the Venezuelan National Assembly declared Juan Guaidó the Interim President of the Republic pursuant to article 233 of the Venezuelan Constitution.  On January 23, 2019, the President of the United States officially recognized Mr. Guaidó as the Interim President and declared the Maduro regime illegitimate.[4]  The Interim Government has now been recognized as the legitimate government of the Republic by more than 50 countries.  *See* Declaration of Ambassador Carlos Alfredo Vecchio (August 29, 2019) ("Vecchio Decl.") ¶ 3.[5]  Amidst this political turmoil, Venezuela also faces an enormous humanitarian and economic crisis.  Over the past six years, Venezuela's gross domestic product has plummeted nearly 62.2% and an estimated 4.7 million people have fled Venezuela as a result

---

[4]     The White House, *Statement from President Donald J. Trump Recognizing Venezuelan National Assembly President Juan Guaidó as the Interim President of Venezuela* (Jan. 23, 2019), https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-recognizing-venezuelan-national-assembly-president-juan-guaido-interim-president-venezuela.

[5]     The Vecchio Declaration was attached as Exhibit A to the Republic's response to Crystallex's motion to lift a stay in the Third Circuit.  *Crystallex Asset Proceeding Appeal*, No. 18-02797, D.I. No. 3113334282 (3d Cir. Aug. 29, 2019).  A copy is submitted for the Court's convenience as Exhibit A to the Declaration of Joseph E. Neuhaus ("Neuhaus Decl.").

of this far-reaching human rights disaster.[6]

Following the United States Government's recognition of the Interim Government on January 23, 2019, the U.S. Treasury Department imposed new comprehensive sanctions against PDVSA, discussed further below, in order to "prevent further diverting of Venezuela's assets by Maduro and preserve these assets for the people of Venezuela."[7]  OFAC subsequently amended its Venezuelan Sanctions Regulations to reflect these new comprehensive sanctions.

After taking power, the Interim Government immediately took steps to redefine the relationship between the Republic and PDVSA and restore the functional autonomy of PDVH.  *See* Vecchio Decl. ¶¶ 7-8.  On February 5, 2019, the Venezuelan National Assembly passed a statute to regulate the powers of Interim President Guaidó.  *See* Statute to Govern a Transition to Democracy to Re-establish the Full Force and Effect of the Constitution of the Bolivarian Republic of Venezuela ("Democracy Transition Statute") (Neuhaus Decl., Ex. B (Spanish original), Ex. C (English translation)).  Article 15(a) of the Democracy Transition Statute empowers the Interim President to "[a]ppoint ad hoc Administrative Boards" of state-owned corporations for the purpose of "adopting the measures necessary to control and protect State company assets."  Declaration of José Ignacio Hernández ("Hernández Decl.") ¶ 11(a).

With respect specifically to PDVSA, Article 34 of the Democracy Transition

---

[6]    Statement by United Nations High Commissioner for Human Rights Michelle Bachelet, Oral Update on the Situation of Human Rights in the Bolivarian Republic of Venezuela (Dec. 18, 2019), https://www.ohchr.org/EN/NewsEvents/Pages/DisplayNews.aspx?NewsID=25438&LangID=E.

[7]    U.S. Dep't of Treasury, Press Release, *Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A.* (Jan. 28, 2019), *available at* https://home.treasury.gov/news/press-releases/sm594.  *See also* U.S. Dep't of Treasury, Determination Pursuant to Section 1(a)(i) of Executive Order 13850 (Jan. 28, 2019) (designating PDVSA as a blocked person pursuant to Executive Order 13850 of Nov. 1 2018); Exec. Order No. 13884, § 1(a), 84 Fed. Reg. 38843 (Aug. 5, 2019) (property and interests in property of *both* the Republic and PDVSA in the United States "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in.").

Statute directs the Interim President to "appoint an ad hoc Administrative Board" for PDVSA ("PDVSA Administrative Board").  *Id.* ¶ 11.   Article 34 directs the PDVSA Administrative Board to appoint a new board of directors for PDVH, which, in turn, is "to appoint new boards of directors for the PDV Holding, Inc.'s subsidiaries, including Citgo Petroleum Corporation." Article 34 also mandates that the new PDVH directors "guarantee the operational autonomy of said companies, particularly with respect to PDVSA."  *Id.*  To that end, Article 34 provides for "autonomous management" of PDVH and its subsidiaries, specifically insulates PDVH and CITGO from Maduro, and prohibits PDVH and its subsidiaries from making payments or distributions to PDVSA until democracy is restored in Venezuela.  *Id.*

Pursuant to this statutory mandate, on February 8, 2019, Interim President Guaidó appointed the members of the PDVSA Administrative Board, and the National Assembly ratified the appointments.[8]   On February 15, the PDVSA Administrative Board appointed a new, independent board of directors of PDVH, which subsequently elected a new board of directors of CITGO.  *See Jiménez* v. *Palacios,* 2019 WL 3526479, at *6 (Del. Ch. Aug. 21, 2019).

On April 10, 2019, Interim President Guaidó issued Presidential Decree No. 3 ("Decree No. 3"), which granted "new responsibilities and duties" to the PDVSA Administrative Board for the purpose of "protect[ing] State of Venezuela's foreign assets, directly or indirectly controlled by PDVSA" including, for example, the power to "legally represent PDVSA and its subsidiary companies abroad."[9]   Decree No. 3 also mandated the Board's strict political independence, ordering it to "autonomously and independently exercise the powers herein conferred," and directed the Board to, among other things, "refrain from following political or partisan guidelines" or from "adopt[ing] any resolution that allows for the use of resources or

---

[8]     See Neuhaus Decl. Ex. D (Spanish original), Ex. E (English translation).

[9]     *See* Neuhaus Decl. Ex. F (Spanish original), Ex. G (English translation).

assets of these subsidiaries for the benefit of the Republic." *Id.*  Decree No. 3 also directed PDVSA's subsidiaries to "adopt corporate governance provisions that ensure their autonomy and independence." *Id.*

On July 29, 2019, six months after Interim President Guaidó assumed control of the Republic's assets outside Venezuela, the Third Circuit affirmed this Court's *Crystallex Asset Proceeding* decision.  *Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019) (the "*Crystallex Asset Proceeding Appeal*").  In limiting its holding to the "record before the district court" in 2018, the panel's opinion observed that the Republic could, on remand, "direct to the District Court credible arguments to expand the record with later events." *Id.* at 144.[10]

This Court's decision in the *Crystallex Asset Proceeding* has not gone unnoticed by others with claims against Venezuela.  After the decision was announced by this Court and upheld by the Third Circuit, additional creditors quickly initiated actions seeking to enforce claims against the Republic and obtain priority over similarly situated creditors.[11]  On November 15, 2019, Tidewater moved for a writ of attachment against PDVSA's shares in PDVH, relying

---

[10]    On November 21, 2019, the Third Circuit denied the Republic's motions for panel and *en banc* rehearing.  *See* Order Sur Pet'n for Reh'g, No. 18-2797 (3d Cir. Nov. 21, 2019).  On May 18, 2020, the Supreme Court denied the Republic's petition for certiorari.  *See Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, C.A. No.: 17-mc-151-LPS, D.I. 174 (D. Del. May 22, 2020).

[11]    *See*, *e.g.*, *Saint-Gobain Performance Plastics Europe* v. *Bolivarian Republic of Venezuela et al*, C.A. No. 18-cv-01963-LPS, D.I. 1 ¶3  (D. Del. Dec. 12, 2018) ("[PDVSA] is, as this Court has already found, an alter ego of Venezuela"); *ACL1 Investments Ltd., et al.* v. *Bolivarian Republic of Venezuela*, C.A. No. 19-cv-09014, D.I. 1, ¶ 31 (S.D.N.Y. September 27, 2019) (arguing that "ongoing economic and political instability in Venezuela . . . has not prevented other creditors from pursuing remedies" and that "[t]hese regrettable circumstances . . . constrain [the plaintiffs] to bring the present action to preserve their rights").  *See also Red Tree Investments, LLC* v. *Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*, C.A. No. 19-cv-02523, D.I. 40, at 6 (S.D.N.Y. August 26, 2019) (arguing that a stay should be lifted, because, *inter alia*, other parties seeking to enforce their rights against PDVSA and Venezuela might otherwise obtain priority).

solely on this Court's decision in the *Crystallex Asset Proceeding*.  D.I. 5 at 7-9.

## ARGUMENT

As the party seeking to attach PDVSA's shares of PDVH, Tidewater bears the burden of overcoming the "strong presumption" of separateness between PDVSA and the Republic.  *Crystallex Asset Proceeding*, 333 F. Supp. 3d at 395-96; Dec. 12 Order at 17 (creditors seeking writs of attachment against the Republic "must prove, by a preponderance of the evidence, that PDVSA is the alter ego of Venezuela on and as of the pertinent date").  Tidewater seeks to meet that burden here by relying entirely on this Court's ruling in the *Crystallex Asset Proceeding*.[12]  But that position is untenable under this Court's Dec. 12 Order, which unequivocally concluded that the Court's extensive findings in *Crystallex* cannot be given preclusive effect in subsequent actions, because the questions of (i) whether PDVSA currently can be deemed the "alter ego" of the Republic, and (ii) whether current OFAC Venezuelan Sanctions Regulations permit attachment of shares of PDVH owned by PDVSA, have not been actually litigated by the parties nor decided by any court.  *See* Dec. 12 Order at 14 ("[T]he Court agrees with the Republic that '[t]he alter-ego status today was not actually litigated and necessarily decided in [the Court's] decision in August of 2018'") (citing *Crystallex 1* D.I. 118 at 57); *id.* at 5, 16 (application of collateral estoppel inappropriate in light of, among other things, changes to OFAC regulations).

Indeed, "[a] party asserting collateral estoppel must prove the following elements:

---

[12]     Although Tidewater does not expressly raise the doctrine of collateral estoppel, it clearly is the basis for their motion. D.I. 5 at 8 ("Critically, in a similar case, this Court has already found that PDVSA is an alter ego of Venezuela."); *cf. In re Hensley*, 551 B.R. 792, 799 (E.D. Tex. 2015) (applying doctrine of collateral estoppel even though party "did not explicitly use the words 'collateral estoppel' or 'issue preclusion' in their pleadings"). As the party asserting collateral estoppel, Tidewater bears the burden of establishing that its elements are met in this case. *See United States* v. *Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984); *see also* Dec. 12 Order at 17.

'(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment.'"  Dec. 12 Order at 14 (citing *Nat'l R.R. Passenger Corp.* v. *Pa. Pub. Util. Comm'n*, 342 F.3d 242, 252 (3d Cir. 2003) (internal quotation marks omitted).  Collateral estoppel is inapplicable where (as here) the factual circumstances of the subsequent action differ in "material" or "controlling" ways.  *Fairchild Semiconductor Corp.* v. *Power Integrations, Inc.*, 2016 WL 1179244, at \*3 (D. Del. Mar. 24, 2016) (Stark, J.) (issue preclusion inapplicable in light of "new and different facts") (citing *Scooper Dooper, Inc.* v. *Kraftco Corp.*, 494 F.2d 840, 846 (3d Cir. 1974)).

Courts may also exercise their discretion to decline to apply collateral estoppel where, as here, "equitable principles disfavor its application."  Dec. 12 Order at 15; *see also PenneCom B.V.* v. *Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) ("[C]ollateral estoppel is an equitable doctrine—not a matter of absolute right.  Its invocation is influenced by considerations of fairness in the individual case.").  As this Court concluded in the Dec. 12 Order, "the equities do not favor the application of collateral estoppel that creditors, including OI, are seeking."  Dec. 12 Order at 16.

I.  **Tidewater Cannot Rely on the *Crystallex Asset Proceeding* to Show that PDVSA is Venezuela's Alter Ego Because Circumstances in the Republic and Its Relationship with PDVSA Have Changed Dramatically.**

This Court's findings concerning the relationship between PDVSA and the Maduro-led Republic in the *Crystallex Asset Proceeding* were based on a record reflecting the circumstances at the time of the Court's decision.  Since this Court issued its decision in August 2018, a political sea change has occurred in Venezuela, particularly with respect to control of PDVSA's assets outside Venezuela.  Indeed, in rejecting OI's claim that it was entitled to a writ of attachment solely on the basis of collateral estoppel, this Court agreed with the Republic that

"'things are not at all the same' as they were when the Court made its findings in the *Crystallex Asset Proceeding*." Dec. 12 Order at 14. As the Court recognized, those "changed factual circumstances" are highly material to the Court's conclusion of alter ego status and thus "preclude the application of collateral estoppel." *Fairchild*, 2016 WL 1179244, at *3 (Stark, J.) ("Where the material or 'controlling' facts are different, there are changed circumstances, and issue preclusion does not apply.").

     **A.**    **This Court conducted its *Bancec* analysis in light of circumstances at the time of its decision.**

     In concluding that PDVSA was the alter ego of the Republic, this Court considered the facts at the time of its decision. The Court noted that the relief Crystallex was seeking related to the status of the shares of PDVH at that time, and not some other time: "'the specific property at issue on this motion—the shares of PDVH—though nominally held in the name of PDVSA, are, *at this time*, really the property of Venezuela.'" *Crystallex Asset Proceeding*, 333 F. Supp. 3d at 391, 394 (emphasis added) (twice quoting Crystallex's motion). In granting that relief, the Court looked to events over several years leading up to its August 2018 decision, an approach that the Third Circuit affirmed, *Crystallex Asset Proceeding Appeal*, 932 F.3d at 150 (affirming "totality-of-the-circumstances inquiry" to determine commercial use "at the moment the writ is executed"). The Court expressly cautioned that its *Crystallex* alter ego finding was limited to the facts at that time and on the record before it:

> [T]he record which has persuaded this Court that PDVSA and Venezuela should be treated as alter egos of one another may not be the same record that is created in some other action. Indeed, even in this case, the record may be supplemented in the next stage of the proceedings . . . which could potentially lead to different findings.

333 F. Supp. 3d at 424-25; *see also id.* at 425 (noting that the Republic might subsequently "appear and seek to supplement the factual record already developed in this litigation" in support

of an effort to quash the writ).  The Third Circuit made a similar point.  932 F.3d at 144 ("[W]e render our decision based on the record before the district court . . . .  On remand, Venezuela may direct to the District Court credible arguments to expand the record with later events.").[13]

As this Court acknowledged in the Dec. 12 Order, "the pertinent date on which an alter ego relationship must exist (or must have existed) may well differ in different cases involving different creditors"; therefore, the Court was "not persuaded" that its "finding of an alter ego relationship as of August 2018 is dispositive of whether such a relationship existed at any other time."  Dec. 12 Order at 14-15.  That conclusion has particular bearing here, because in fact, the situation that the Court must confront to adjudicate Tidewater's application is radically different, as set out below.[14]

> **B.**     **The circumstances in the Republic have changed dramatically since the *Crystallex Asset Proceeding* was decided.**

As the Court recognized in the Dec. 12 Order, the *Crystallex Asset Proceeding* was decided in August 2018, when the Maduro regime was still the recognized government of the Republic.  Dec. 12 Order at 15-16.  The Court's findings therefore concerned the relationship between PDVSA and the Maduro-controlled Republic.  All this changed, however, on January 10, 2019, when the Venezuelan National Assembly declared Juan Guaidó—then President of the Venezuelan National Assembly—to be Interim President of the Republic, and President Guaidó

---

[13]     In its brief before the Third Circuit, the Republic argued that the court should take into account the changed political situation in its analysis.  *Crystallex Asset Proceeding Appeal*, 932 F.3d at 144.  The Circuit declined to do so, however, stating that it would instead follow "the standard practice" in rendering its decision based on the record that was before this Court, and invited this Court to consider the changed situation on remand.  *Id.*  Thus, the question of whether current political circumstances in Venezuela would satisfy *Bancec* has not been actually litigated or decided by either court.

[14]     The Republic, which at the time of the *Crystallex* district court proceedings was under the Maduro regime and did not appear in that case, reserves the right to make additional arguments regarding the appropriate time period for determining whether an alter ego relationship existed between PDVSA and the Republic.

took control of the Republic's assets outside Venezuela.  President Trump's recognition of the Interim Government (and *nonrecognition* of the Maduro regime) has sweeping effects, including binding all domestic courts to recognize the Interim Government as the sole legitimate government in Venezuela in proceedings before them.  *See Guaranty Tr. Co.* v. *United States*, 304 U.S. 126, 138 (1938) (executive branch's "action in recognizing a foreign government" "is conclusive on all domestic courts"); *see also Crystallex Asset Proceeding Appeal*, 932 F.3d at 135 n.2 (following *Guaranty Trust*).  Likewise, "the courts of this country may not examine the effect of decrees of the unrecognized foreign sovereign and determine rights in property . . . upon the basis of these decrees."  *The Maret*, 145 F.2d 431, 442 (3d Cir. 1944).[15]

The National Assembly and President Guaidó have taken extensive steps to insulate the asset at issue here—the shares of PDVH in the United States—from any control of the Republic.  As discussed above, one of the Interim Government's first official acts was to approve the Democracy Transition Statute, which, among other things, redefined the relationship between the Republic and PDVSA while guaranteeing the functional autonomy of PDVH with respect to PDVSA. Vecchio Decl. ¶¶ 7-8.  The Democracy Transition Statute empowered the Interim Government to appoint an *ad hoc* Administrative Board of PDVSA, which the Interim Government did on February 8, 2019.  *See Jiménez* v. *Palacios,* 2019 WL 3526479, at *6 n.24 (citing Decree of Juan Guaidó (Feb. 8, 2019)).  The *ad hoc* Administrative Board and its appointment of new management at CITGO were approved by the Delaware Court of Chancery in August 2019.  *Id.* at *11-12.

---

[15]     For this reason, to the extent that PDVSA's assets within Venezuela remain under the illegal domination and control of Mr. Maduro and his political allies, that control may no longer be attributed to the Republic.  If the Court were to attribute to the Republic the current conduct of Mr. Maduro and his associates, it would be implicitly recognizing their legitimacy, contrary to the President's exclusive recognition power.  *See Maret*, 145 F.2d at 442 (refusing to give effect to decrees of a non-recognized government).

In addition to the Democracy Transition Statute, the Interim Government also implemented Decree No. 3, which establishes governance rules for PDVSA and PDVH Holding, Inc. to ensure their independence.  Hernández Decl. ¶ 20.  For example, Decree No. 3 prohibits the ad-hoc administrative board "from following political or partisan guidelines," declares null and void the PDVSA board appointed by Maduro, and prohibits the National Assembly and the Interim Government from making "any decisions that affect the normal business activities of PDV Holding Inc. and its subsidiaries, including Citgo Petroleum Corporation."  Hernández Decl. ¶ 23(a).  Together, the Democracy Transition Statute and Decree No. 3 have put in place robust measures to guarantee the autonomy of PDVSA and PDVH Holding, Inc.  The record thus makes clear that the alter ego status, *vel non*, of PDVSA as of the Court's August 2018 decision is now very different.  *See* Dec. 12 Order at 14 ("As the Republic persuasively argues: 'things are not at all the same' as they were when the Court made its findings in the *Crystallex Asset Proceeding*.").

Further, there is no reason to believe that the Interim Government is abusing the corporate form of PDVSA, has inappropriately misused the assets of PDVSA or has diverted the Republic's assets to PDVSA to shield them from creditors.  To the contrary, the Republic submits that, on a full record reflecting current facts, the Court would reach a completely different conclusion.

### C.     Changed circumstances foreclose application of collateral estoppel here.

In light of the dramatically changed circumstances described above, Tidewater cannot establish either of the first two elements of collateral estoppel—that the issues are identical and were actually litigated in the prior proceeding—because (i) the issue sought to be precluded (whether PDVSA currently is an alter ego of the Guaidó-led Republic) is not the same as the issue decided in the *Crystallex Asset Proceeding* (whether, in 2018, PDVSA could be

deemed the alter ego of the Maduro-led Republic), and (ii) the question of whether PDVSA is currently the alter ego of the Republic was not—and could not have been—actually litigated. *See* Dec. 12 Order at 14 (concluding that "[t]he alter-ego status today was not actually litigated and necessarily decided in [the Court's] decision in August of 2018") (alterations in original). Neither Crystallex nor Tidewater has propounded a record on which the Court could make that finding, nor has the Republic or PDVSA had the opportunity to actually litigate that question.

### D.    Equitable factors weigh against application of collateral estoppel

Even if Tidewater had met the elements of collateral estoppel (it has not), "equitable principles disfavor its application in the circumstances presented here."  Dec. 12 Order at 15; *see also Nat'l R.R. Passenger Corp.* v. *Pa. Pub. Util. Comm'n*, 288 F.3d 519, 528 (3d Cir. 2002) (courts must consider whether special circumstances render application of collateral estoppel inequitable).  In particular, in denying OI's motion for attachment, this Court identified several factors that weigh against application of collateral estoppel, including the litigant's lack of a specific license from OFAC; uncertainty created by further proceedings, which could diminish the value of PDVH; changes to U.S. sanctions; "the change in the Boards of Directors at PDVSA, PDVH, CITGO Holding, Inc., and CITGO"; the "change in the U.S.-recognized government of Venezuela"; "issues of international affairs and United States foreign policy"; "[t]he Court's concern not to create a 'run on the bank,' that is, an influx of creditors to the Court, with negative consequences for the Republic, for U.S. policy (which favors an orderly transition of power in the Republic and coordinated restructuring of its debts) and potentially this Court; and the humanitarian crisis in Venezuela."  Dec. 12 Order at 4-7.  Each of these factors applies with equal force here.

## II.    Tidewater Cannot Obtain an Attachment of the Shares of PDVH Owned by PDVSA Without a Specific License from OFAC.

In the twenty-one months since this Court's ruling in the *Crystallex Asset Proceeding*, the Executive Branch has taken a series of measures to significantly strengthen and expand the Venezuelan sanctions regime.  *See* Dec. 12 Order at 5 & n.7 (recognizing "change in regime of U.S. sanctions imposed on Venezuela and recent amendment of OFAC's policies and guidance").  Those measures were not (and could not have been) considered by the Court in the *Crystallex Asset Proceeding*.  Tidewater therefore cannot rely on this Court's findings in *Crystallex* concerning the more limited sanctions in place in August 2018 to show that attachment is permissible under the current sanctions regime.  *See Hawksbill Sea Turtle* v. *FEMA*, 126 F.3d 461, 465 (3d Cir. 1997) (there can be no identity of issues where subsequent action "present[s] a new and significantly different factual setting").  Furthermore, it is now clear beyond doubt that, under the current Venezuelan sanctions regime, Tidewater cannot obtain an attachment of the shares of PDVH owned by PDVSA without first obtaining a specific license from OFAC.

### A.    Tidewater's motion raises sanctions issues not litigated in *Crystallex*.

At the time of this Court's decision in the *Crystallex Asset Proceeding*, OFAC had issued only selective sanctions—rather than comprehensive sanctions, or "blocking" orders[16]—against Venezuela.[17]    Executive Order 13835 prohibited "the sale, transfer,

---

[16]    "Sanctions can be either comprehensive or selective, using the blocking of assets and trade restrictions to accomplish foreign policy and national security goals."  U.S. Dep't of Treasury, OFAC FAQs: General Questions, FAQ No. 1 (2019), https://www.treasury.gov/ resource-center/faqs/Sanctions/Pages/faq_general.aspx#basic.    Selective sanctions impose restrictions only with respect to specified transactions, while the blocking of assets constitutes a comprehensive sanction and "immediately imposes an across-the-board prohibition against transfers or dealings of any kind with regard to [blocked] property."  *See* U.S. Dep't of Treasury, OFAC FAQs: General Questions, FAQ No. 9 (2019), https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#basic.  As a result of blocking, "the exercise of

assignment, or pledging as collateral by the Government of Venezuela of any equity interest in any entity in which the Government of Venezuela has a 50 percent or greater ownership interest." 83 Fed. Reg. 24001 (May 21, 2018). PDVSA argued to the Court that this provision prohibited "'the attachment and execution of the shares of its wholly-owned Delaware subsidiary, PDVH,'" relying in particular on OFAC guidance that said, "OFAC authorization would likely be required for attachment of equity interest in any entity in which the Government of Venezuela has a 50 percent or greater ownership interest." 333 F. Supp. 3d at 420-21 (*citing* D.I. 63 at 2 & OFAC FAQs: Other Sanctions Programs, Venezuela Sanctions). The Court, without distinguishing between attachment and execution and noting that the OFAC guidance said only that a license would "likely" be required, found that Executive Order 13835 did not bar the granting of Crystallex's writ of attachment. *Id.* at 421.[18]

After this Court's decision in *Crystallex Asset Proceeding*, and following President Trump's recognition of Juan Guaidó as the Interim President of the Republic, the Executive Branch issued additional measures that broadened the Venezuelan sanctions regime and clarified the restrictions on property of PDVSA. In particular, on January 28, 2019, OFAC issued a comprehensive sanction designating PDVSA as a blocked person pursuant to Executive

---

powers and privileges normally associated with ownership is prohibited without authorization from OFAC." *Id.*

[17]    Exec. Order No. 13692, 80 Fed. Reg. 12747 (Mar. 8, 2015); Exec. Order No. 13808, 82 Fed. Reg. 41155 (Aug. 24, 2017); Exec. Order No. 13827, 83 Fed. Reg. 12469 (Mar. 19, 2018); Exec. Order No. 13835, 83 Fed. Reg. 24001 (May 21, 2018).

[18]    The Republic respectfully disagrees with that finding and suggests that, on a full record and with participation from OFAC, the Court would reach the conclusion that, even under the prior sanctions regime, a creditor would be required to obtain a license from OFAC not only for *execution* of the PDVH shares but also for the earlier step of *attachment* of the shares, as the wording of the OFAC guidance suggests.

Order 13850 of November 1, 2018.[19]   As a consequence of that designation, all property and interests in property of PDVSA in the United States were "blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in."   Exec. Order No. 13850, § 1(a), 83 Fed. Reg. 55243 (Nov. 2, 2018).  This measure was intended to "support Interim President Juan Guaidó . . . to restore [Venezuela's] democracy" and to "preserve [PDVSA's] assets for the people of Venezuela."[20]   On August 5, 2019, President Trump went further, issuing Executive Order 13884, which is an additional comprehensive sanction that provides that all property and interests in property of *both* the Republic and PDVSA in the United States "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in."  Exec. Order No. 13884, §§1(a), 6(d), 84 Fed. Reg. 38843 (Aug. 5, 2019).

Subsequently, on November 22, 2019, OFAC published amendments to the regulations governing blocking of property pursuant to Venezuelan sanctions (the "Amendments"). 84 Fed. Reg. 64,415 (Nov. 22, 2019).  The Amendments make clear that the long-standing prohibitions applicable to blocked property apply to the property and interests in property blocked pursuant to Executive Orders 13850 and 13884 (the "Blocking Orders").  Additionally, as amended, the Venezuelan Sanctions Regulations expressly prohibit the "enforcement of any . . . judgment . . . through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect [blocked] property or interests in [blocked] property" absent a *specific license* from OFAC.   § 591.407; *see also* note 1 to § 591.509 (referencing § 591.407).

In  finding  that  the  selective  sanctions  of  Executive  Order  13835,  and  the

---

[19]     *See* U.S. Dep't of Treasury, Determination Pursuant to Section 1(a)(i) of Executive Order 13850 (Jan. 28, 2019) *available at* https://www.treasury.gov/resource-center/sanctions/Programs/ Documents/vz_sector_determination_oil_20190128.pdf.

[20]     *See supra* note 7.

particular guidance thereunder, did not prevent Crystallex from obtaining a writ of attachment, the Court never had occasion to consider the effect of the broader subsequently issued blocking orders nor the Amendments.  As a consequence, the question of whether they prevent attachment of PDVH shares was not—and could not possibly have been—actually litigated, and the Court's ruling does not resolve whether a license is *now* needed to attach the PDVH shares.

### B.    Current Venezuelan Sanctions Regulations clearly prohibit attachment of PDVSA's shares in PDVH absent a specific license from OFAC.

Tidewater's motion makes no effort to engage with the significant changes enacted by the Executive Branch to the Venezuelan sanctions regime since the *Crystallex Asset Proceeding*.  Perhaps for good reason: the Blocking Orders and Amendments issued after the Court's August 2018 ruling make clear that Tidewater must obtain a specific license[21] from OFAC before moving to secure any writ of attachment against the now-blocked PDVH shares.

In particular, each of the Blocking Orders blocks any transfers of property and interests in property of PDVSA in the United States.[22]  Under OFAC's Venezuelan Sanctions Regulations, which now clearly include the Blocking Orders, the term "transfer" has been broadly defined to include "the appointment of any agent, trustee, or fiduciary; the *creation* or transfer of *any lien*; the issuance . . . of . . . any judgment, decree, *attachment* . . . or other judicial or administrative process or order, or the *service of any garnishment*."  31 C.F.R. § 591.310 (emphasis added).  Further, OFAC's Venezuelan Sanctions Regulations provide that "any

---

[21]    OFAC issues two types of licenses: a "general license authorizes a particular type of transaction for a class of persons without the need to apply for a license," while a "specific license is a written document issued by OFAC to a particular person or entity, authorizing a particular transaction in response to a written license application." U.S. Dep't of Treasury, OFAC FAQs: General Questions, FAQ No. 74, https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#basic

[22]    Shares of Delaware corporations are deemed to be located in Delaware.  Del. Code Ann. tit. 8 § 169.

*attachment*, judgment, decree, *lien*, execution, *garnishment*, or *other judicial process* is null and void" with respect to blocked property.  31 C.F.R. § 591.202(e) (emphases added).  Under the new Amendments, there is no question that OFAC's prohibition on "attachment" or "garnishment" of blocked property now also applies to the property blocked by Executive Orders 13850 and 13884, namely all property of the Republic and PDVSA in the United States.

The Amendments also make clear that only a specific license—and not a general license—would permit the attachment Tidewater seeks.  Specifically, the Amendments added an interpretive provision to "clarif[y] that, notwithstanding the existence of any general license . . . enforcement of any . . . judgment . . . through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect [blocked] property or interests in [blocked] property" "is prohibited *unless authorized pursuant to a specific license issued by OFAC*."  84 Fed. Reg. 64,416 (emphasis added).[23]

Guidance from OFAC further confirms this point: on December 9, 2019, OFAC published FAQ 808, which made clear that, under OFAC's prohibition on unlicensed "garnishment[] or other judicial process purporting to transfer or otherwise alter or affect

---

[23]    OFAC further confirmed that the general license that authorizes the U.S. Government to engage in certain activities related to Venezuela is also subject to OFAC's specific prohibition on garnishments to enforce judgments.  While the Amendments specifically incorporate that general license for "official business of the United States Government" as § 591.509, OFAC also added the following interpretive note:

> For additional information regarding requirements relating to the entry into a settlement agreement or enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201, *see* § 591.407.

Note 1 to § 591.509.  With this note, OFAC appears to have taken pains to make its position clear that no creditor can enforce a judgment through garnishment absent a specific license from OFAC.

[blocked property]," "a specific license from OFAC would be required for measures such as . . . attaching" blocked property.[24]

   Tidewater has not demonstrated that it applied for, let alone obtained, a specific license to attach PDVH shares.  The Court should deny Tidewater's motion on this basis alone.

<b><u>CONCLUSION</u></b>

   As this Court made clear in its December 12 Order, "any creditor seeking to place itself in a situation similar to Crystallex will have to prove that PDVSA is and/or was the Republic's alter ego on whatever pertinent and applicable date."  Dec. 12 Order at 17.  Tidewater has made no attempt to satisfy that burden.  Moreover, to grant Tidewater's motion, this Court would have to disregard the significant changes to the U.S. sanctions regime that now clearly prohibit attachment of PDVH shares without a specific license from OFAC.  For both these reasons, Tidewater's motion should be denied.

---

[24] U.S. Dep't of Treasury, OFAC FAQs: General Questions, FAQ No. 808 (2019), https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#basic.

Of Counsel:

Sergio J. Galvis
Joseph E. Neuhaus (*pro hac vice*)
James L. Bromley (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  212-558-4000
Facsimile:  212-558-3588
galviss@sullcrom.com
neuhausj@sullcrom.com
bromleyj@sullcrom.com

Angela N. Ellis (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W. Suite 700
Washington, D.C.  20006-5215
Telephone:  202-956-7500
Facsimile:  202-293-6330
ellisan@sullcrom.com

Dated:  June 1, 2020

 */s/  A. Thompson Bayliss*                    
A. Thompson Bayliss (#4379)
ABRAMS & BAYLISS
20 Montchanin Road, Suite 200
Wilmington, DE 19807
Telephone: 302-778-1000
bayliss@abramsbayliss.com

*Attorneys for Defendant Bolivarian Republic of Venezuela*