IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TIDEWATER INVESTMENT SRL and TIDEWATER CARIBE S.A.,<br><br>Plaintiffs,<br><br>v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br><br>Defendant. | C.A. No. 19-mc-00079-LPS |

**SUPPLEMENTAL BRIEF OF BOLIVARIAN REPUBLIC
OF VENEZUELA IN OPPOSITION TO PLAINTIFFS'
MOTION FOR AN ORDER AUTHORIZING THE ISSUANCE OF A
<u>WRIT OF ATTACHMENT *FIERI FACIAS* PURSUANT TO 28 U.S.C. 1610(C)</u>**

OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Ginger.Anders@mto.com

George M. Garvey
Adeel Mohammadi
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com
Adeel.Mohammadi@mto.com

Dated: July 21, 2023

A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

## **TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF PROCEEDINGS ...................................................................................1

SUMMARY OF ARGUMENT ........................................................................................................2

ARGUMENT ....................................................................................................................................3

    I.    Tidewater's Motion For Writ Of Attachment Must Be Denied .............................3

        A.    Under Federal Rule of Civil Procedure 69(a) and Delaware alter ego principles, PDVSA's property may not be attached to satisfy a judgment against the Republic ..................................................................3

        1.    Tidewater has not pleaded or proved fraud or similar injustice, as Delaware law requires .............................................................................4

        2.    Federal common law concerning FSIA immunity does not supplant Delaware law that determines what property is subject to execution ..........8

        B.    The Republic reserves its arguments on appeal under the FSIA ...............14

    II.    Tidewater Should Not Be Added As An Additional Judgment Creditor ...............15

CONCLUSION ...............................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988) ............................................................................................................. 8

*Banco Nacional de Cuba v. First Nat'l City Bank*, 431 F.2d 394, 395-96 (2d Cir.
    1970), *rev'd on other grounds*, 406 U.S. 759 (1972) ......................................................... 10

*Bright v. United States*,
    603 F.3d 1273 (Fed. Cir. 2010) ............................................................................................ 9

*Cassirer v. Thyssen-Bornemisza*,
    142 S. Ct. 1502 (2022) .................................................................................................. 6, 10

*City of Milwaukee v. Illinois & Michigan*,
    451 U.S. 304 (1981) ......................................................................................................... 8, 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    2021 WL 129803 (D. Del. Jan. 14, 2021) ......................................................................... 12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    24 F.4th 242 (3d Cir. 2022) ............................................................................................ 6, 12

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    333 F. Supp. 3d 380 (D. Del. 2018) ................................................................................ 8, 13

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
    932 F.3d 126 (3d Cir. 2019) ........................................................................... 10, 11, 12, 13, 14

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983) ................................................................................................... *passim*

*Harrison v. Soroof Int'l, Inc.*,
    320 F. Supp. 3d 602 (D. Del. 2018) ..................................................................................... 6

*Hozier v. Midwest Fasteners, Inc.*,
    908 F.2d 1155 (3d Cir. 1990) ............................................................................................... 8

*Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*,
    356 F.3d 731 (7th Cir. 2004) ............................................................................................... 5

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ............................................................................................................... 9

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    313 F.3d 70 (2d Cir. 2002) ................................................................................................... 4

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
   394 F.3d 1143 (9th Cir. 2004) ..................................................................................................5

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
   998 F.2d 157 (3d Cir. 1993)......................................................................................................9

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*,
   801 F.3d 369 (3d Cir. 2015)......................................................................................................8

*OI European Grp. B.V. v. Bolivarian Republic of Venez.*,
   __ F. Supp. 3d __, No. 1:17-mc-00151-LPS, 2023 WL 2609248 (D. Del. Mar. 23, 2023) ..................................................................................................................1, 11

*OI European Grp. B.V. v. Bolivarian Republic of Venez.*,
   ___ F.4th ___, No. 23-1647, 2023 WL 4385930 (3d Cir. July 7, 2023) .......................... *passim*

*Pac. Reinsurance Mgmt. Corp. v. Fabe*,
   929 F.2d 1215 (7th Cir. 1991) ..................................................................................................5

*Peterson v. Islamic Republic of Iran*,
   627 F.3d 1117 (9th Cir. 2010) ..................................................................................................4

*Republic of Argentina v. NML Capital, Ltd.*,
   573 U.S. 134 (2014)..................................................................................................................4

*Schreiber v. Kellogg*,
   50 F.3d 264 (3d Cir. 1995)....................................................................................................4, 5

*Sears, Roebuck & Co. v. Sears plc*,
   744 F. Supp. 1297 (D. Del. 1990).............................................................................................7

*Showan v. Pressdee*,
   922 F.3d 1211 (11th Cir. 2019) ................................................................................................9

*Sys. Div., Inc. v. Teknek Elecs., Ltd.*,
   253 F. App'x 31 (Fed. Cir. 2007) .............................................................................................5

*Trust v. Kummerfeld*,
   153 F. App'x 761 (2d Cir. 2005) ..............................................................................................5

*United States v. Miller*,
   229 F.2d 839 (3d Cir. 1956)......................................................................................................5

*United States v. Yazell*,
   382 U.S. 341 (1966)..................................................................................................................5

*Walker Int'l Holdings, Ltd. v. Republic of Congo*,
   415 F.3d 413 (5th Cir. 2005) ..................................................................................................11

**STATE CASES**

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
154 A.2d 684 (Del. 1959) ...................................................................................................5, 6

*Crosse v. BCBSD, Inc.*,
836 A.2d 492 (Del. 2003) ...................................................................................................6, 7

*Doberstein v. G-P Industries, Inc.*,
2015 WL 6606484 (Del. Ch. Oct. 30, 2015) ..........................................................................7

*Manichaean Capital LLC v Exela Technologies, Inc.*,
251 A.3d 694 (Del. Ch. 2021) .................................................................................................7

*Medi-Tek of Egypt Corp. v. Bausch & Lomb Surgical, France*,
2004 WL 5366102 (Del. Ch. Mar. 4, 2004) ............................................................................7

*Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*,
752 A.2d 1175 (Del. Ch. 1999) ...........................................................................................6, 7

**FEDERAL STATUTES**

28 U.S.C. § 1291 ........................................................................................................................13

28 U.S.C. § 1602 *et seq*. ..................................................................................................... *passim*

28 U.S.C. § 1606 ............................................................................................................4, 5, 9, 11

28 U.S.C. § 2072(b) .....................................................................................................................8

**STATUTES - OTHER**

8 Del. C. §§ 324(a), 5031 ............................................................................................................5

**FEDERAL RULES**

Federal Rule of Civil Procedure 69(a) ................................................................................ *passim*

The Bolivarian Republic of Venezuela (the "Republic") respectfully submits this supplemental brief in opposition to the motion of plaintiffs Tidewater Investment SRL and Tidewarer Caribe, S.A. ("Tidewater") for an order authorizing a writ of attachment *fieri facias* against shares of PDV Holding, Inc. ("PDVH") owned by Petróleos de Venezuela, S.A. ("PDVSA").

**NATURE AND STAGE OF PROCEEDINGS**

Tidewater, a judgment creditor of the Republic, has registered a judgment with the Court and has moved for an order for the issuance of a writ of attachment, to be served on PDVH, attaching PDVSA's shares of stock in PDVH, based on the allegation that PDVSA is the alter ego of the Republic. The Republic opposes Tidewater's motion.

Tidewater submitted a Supplemental Brief (D.I. 29-2) on May 17, 2023 ("Supp. Br."), arguing that it was entitled to a writ of attachment under the reasoning of this Court's decision in *OI European Grp. B.V. v. Bolivarian Republic of Venez.*, __ F. Supp. 3d __, No. 19-mc-290-LPS, 2023 WL 2609248 (D. Del. Mar. 23, 2023) ("*OIEG I*"), and adding a request that Tidewater be added as an "Additional Judgment Creditor" pursuant to the Sale Procedures Order in *Crystallex Int'l Corp. v. Bolivarian Republic of Venez.,* No. 1:17-mc-00151-LPS, D.I. 481, or in the alternative, that the Court authorize the issuance and service of such a writ of attachment conditioned on OFAC issuing a license or removing the current sanctions regime.

The Third Circuit subsequently affirmed *OIEG I* in *OI European Grp. B.V. v. Bolivarian Republic of Venez.*, ___ F.4th ___, No. 23-1647, 2023 WL 4385930 (3d Cir. July 7, 2023) ("*OIEG II*"). The Third Circuit reviewed "a narrow question: Did the District Court properly deny PDVSA immunity" under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*.? *See OIEG II*, *2023* WL 4385930, at *3. Applying the factors enumerated in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*") and its progeny,

1

the Third Circuit answered that question in the affirmative. But it declined to review the Republic's and PDVSA's argument that under Rule 69 and Delaware alter ego law, PDVSA's shares may not be attached.[1] Reasoning that "[r]esolution of the immunity issue does not dictate the outcome of the attachment issue," the Third Circuit determined that it lacked jurisdiction to review the attachment issue. *OIEG II* at *12.

## SUMMARY OF ARGUMENT

1. Federal Rule of Civil Procedure 69(a) unambiguously provides that state law (here, Delaware law) governs such proceedings. Delaware law, in turn, unambiguously provides that assets held by an entity that is not the judgment debtor may be attached only if that entity's corporate veil is pierced, which in turn requires a showing that the entity is a sham designed to defraud the creditors—a showing that Tidewater does not attempt to make and cannot make. For this reason, Tidewater's motion must be denied.

2. Federal common law does not supplant state law in proceedings governed by Rule 69(a). The federal common law test for overcoming sovereign immunity under *Bancec* and its progeny, relevant to the question whether an entity is subject to the Court's jurisdiction under the FSIA, does not pre-empt the separate question whether a judgment creditor may execute against the assets of an entity that is owned by the judgment debtor but is not a judgment debtor itself. That question remains governed by state law. Moreover, the Third Circuit's recent decisions declining appellate jurisdiction over this merits question despite affirming this Court's decisions on FSIA immunity confirm that this question is not coterminous with the FSIA immunity question.

---

[1] For the content of the argument presented in *OIEG II* and not decided by the Third Circuit, *cf.* Declaration of Stephen C. Childs ("Childs Dec."), Exhibits 1 and 2 (Opening Briefs of the Republic and PDVSA).

*See OIEG II*, 2023 WL4385930, at *12; *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 24 F.4th 242, 256 (3d Cir. 2022) ("*Crystallex III*").

3. The Republic disagrees with the Third Circuit's decision in *OIEG II*, and is seeking review of that decision in the Supreme Court. But if that decision stands as written, it would foreclose the Republic's arguments for FSIA immunity in this action as well. The Republic will not repeat here the reasons why, based on the actions of the legitimate government of the Republic and of PDVSA's Ad Hoc Board, PDVSA's separate existence was sufficiently respected to preserve its immunity under the FSIA. The Republic expressly reserves the right to appeal from any decision denying FSIA immunity, and to present arguments to this Court or the Third Circuit based on any reversal, modification or overruling of *OIEG II*.

4. Tidewater should not be added as an Additional Judgment Creditor, for the reasons briefed in response to the Court's May 10, 2023 Memorandum Order, D.I. 27 (the "May 10 Order") and argued on June 26, 2023.

## ARGUMENT

**I. Tidewater's Motion For Writ Of Attachment Must Be Denied**

    **A. Under Federal Rule of Civil Procedure 69(a) and Delaware alter ego principles, PDVSA's property may not be attached to satisfy a judgment against the Republic**

Federal Rule of Civil Procedure 69(a) provides that where, as here, "[a] money judgment is enforced by a writ of execution," the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Accordingly, the Rule's plain terms require the court to apply Delaware law to determine the "procedure on execution"—and under Delaware law, attachment is not proper unless PDVSA's corporate structure operates as a vehicle for fraud such that the corporate veil may be pierced.

3

### 1. *Tidewater has not pleaded or proved fraud or similar injustice, as Delaware law requires*

a. ***Delaware law governs the proceedings to execute on a judgment.*** Under Rule 69(a), "a federal court must follow relevant state law in a proceeding to execute on a judgment, unless a federal statute dictates otherwise." *Schreiber v. Kellogg*, 50 F.3d 264, 267 (3d Cir. 1995).

No federal statute dictates application of any law here, other than state law. The FSIA is of course a federal statute, but the FSIA does not purport to establish federal standards for a proceeding to execute against a non-immune foreign instrumentality's assets to satisfy a foreign state's judgment debt in most instances.[2] To the contrary, in *Republic of Argentina v. NML Capital, Ltd.*, the Supreme Court rejected the argument that the FSIA implicitly alters or overrides Rule 69 simply because "the judgment debtor is a foreign state." 573 U.S. 134, 138-40, 143 n.3 (2014); *see* 28 U.S.C. § 1606 (a foreign state that is not immune should be treated the same way as "a private individual under like circumstances"). And the courts of appeals also apply state law to determine, once sovereign immunity is overcome, what foreign state property is subject to execution. *See, e.g.*, *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002) ("We therefore apply New York law to determine what assets are 'subject to enforcement, and thus available to judgment creditors'") (citation omitted); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010) (once sovereign

---

[2] The exception that proves the rule is that 28 U.S.C. § 1610(g), which provides that "the property of a foreign state against which a judgment is entered under section 1605A," which eliminates immunity for actions based on acts of terrorism, "and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, *is subject to attachment in aid of execution, and execution*, upon that judgment." 28 U.S.C. § 1610(g)(1). Otherwise, Section 1610 provides only that property "shall not be *immune* from attachment in aid of execution, or from execution," leaving the question of whether the property is *subject to* attachment or execution to the dictates of Rule 69 and, by extension, state law.

4

immunity was overcome, "California law on the enforcement of judgments" determined whether judgment creditor could reach the judgment debtor's right to receive payment from a third party).

The "relevant state law" here, *Schreiber*, 50 F.3d at 267, is Delaware law, because Delaware is "the state where the [district] court is located." Fed. R. Civ. P. 69(a). Tidewater concedes this point. Supp. Br. At 21-22.

Under Delaware law, Tidewater may execute against the PDVH shares, which are owned by PDVSA, only by piercing PDVSA's corporate veil. That is because the judgments are against the Republic, not against PDVSA itself. *See* 8 *Del. C.* § 324(a) and 10 *Del. C.* § 5031; *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959).

Deciding whether such veil-piercing is appropriate is thus an integral part of the "procedure on execution" and "in proceedings supplementary to and in aid of judgment or execution." Fed. R. Civ. P. 69(a). Whether the veil may be pierced "determines which assets may be reached," which is exactly the issue that Rule 69(a) leaves to state law. *Pac. Reinsurance Mgmt. Corp. v. Fabe*, 929 F.2d 1215, 1219 (7th Cir. 1991); *see Schreiber*, 50 F.3d at 267 (applying Pennsylvania law to determine whether execution could reach judgment debtor's beneficial interest in a trust); *United States v. Yazell*, 382 U.S. 341, 355 (1966); *United States v. Miller*, 229 F.2d 839, 841 (3d Cir. 1956). Accordingly, federal courts applying Rule 69(a) regularly follow state law in determining whether the assets of a party that is not the subject of a judgment may be reached by piercing the corporate veil. *See, e.g.*, *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 737 (7th Cir. 2004) (collecting cases); *Katzir's Floor & Home Design, Inc. v. M-*

*MLS.com*, 394 F.3d 1143, 1148-49 (9th Cir. 2004); *Sys. Div., Inc. v. Teknek Elecs., Ltd.*, 253 F. App'x 31, 34-35 (Fed. Cir. 2007); *Trust v. Kummerfeld*, 153 F. App'x 761, 762 (2d Cir. 2005).³

  **b.** ***Delaware law requires a showing of fraud or similar injustice, and there has been no such showing in this case.*** Appellees have not met their burden of establishing, under Delaware law, that PDVSA's corporate veil may be pierced.

  "Delaware law requires showing *fraud*—not just extensive control—to seize the property of a non-debtor like PDVSA." *Crystallex III*, 24 F.4th at 247-48 (emphasis added). That type of fraud is not proved merely by showing "that the two companies operate as a single entity." *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 614 (D. Del. 2018). Rather, "Delaware law also 'requires that the corporate structure cause fraud or similar injustice.'" *Id.* (quoting *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999)). The Delaware Supreme Court has held that this rule applies to proceedings to attach the stock held by an alleged alter ego of the judgment debtor, as shares of stock ordinarily may be attached and executed upon only if the debtor "appears on the books of the corporation to hold or own such shares." *See Buechner*, 154 A.2d at 687.

  The test is a stringent one: "the corporation" whose veil is sought to be pierced "must be a sham and exist for no other purpose than as a vehicle for fraud." *Wallace*, 752 A.2d at 1184; *see, e.g.*, *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) (plaintiff must establish "that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors"). It is not sufficient simply to allege "fraud or inequity" as part of a substantive claim

---

³ Even if—contrary to all those decisions—Rule 69(a) were somehow inapplicable here, Delaware law would *still* apply, because the FSIA provides that, "when a foreign state is not immune from suit," it is treated like a "private party," including as to "the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1508-09 (2022) (citing 28 U.S.C. § 1606).

6

against the debtor. *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990). Allowing veil-piercing based on such an allegation "would render the fraud or injustice element" of the veil-piercing test "meaningless, and would sanction bootstrapping." *Id.* Instead, the plaintiff must establish "that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse,* 836 A.2d at 497; *see Doberstein v. G-P Industries, Inc.*, C.A. No. 9995-VCP, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015); (debtor's "wrongful acts must be tied to the manipulation of the corporate form"); *Medi-Tek of Egypt Corp. v. Bausch & Lomb Surgical, France*, No. 19760-NC, 2004 WL 5366102, at *4 (Del. Ch. Mar. 4, 2004) (alter ego argument fails when creditor "has not alleged that the corporate form in and of itself operates to serve some fraud or injustice").

Because that fraud requirement is such a high hurdle, piercing the veil under Delaware law is quite "a difficult task."' (citation omitted). *Wallace*, 752 A.2d at 1183. That is by design. Delaware law has a strong, well-established policy of respecting corporate formalities—one of the strongest in the country. *See id*. That policy is especially strong where, as here, a creditor attempts "reverse veil-piercing," reaching the assets of a subsidiary to satisfy the debt of the parent. "[R]everse veil-piercing has the potential to bypass normal judgment collection procedures by permitting the judgment creditor of a parent to jump in front of the subsidiary's creditors." *Manichaean Capital LLC v Exela Techs., Inc.*, 251 A.3d 694, 711 (Del. Ch. 2021). "For obvious reasons, this dynamic would 'unsettle the expectations of corporate creditors who understand their loans to be secured. . . .'" *Id*. (citation omitted). "Only in cases alleging egregious facts, coupled with the lack of real and substantial prejudice to third parties, should the court even consider utilizing the reverse veil-piercing doctrine." 251 A.3d at 714.

Tidewater has not alleged, or introduced any evidence to prove, that PDVSA is a sham that exists only as a vehicle for fraud or injustice similar to fraud. To the contrary, Tidewater concedes that PDVSA was formed as the Republic's state oil concern in 1975, maintains a "constitutionally prescribed role" "to manage the oil industry, including CITGO," and "controls the exploration, exploitation, transportation, manufacturing, refining, storage, commercialization, and other activities of its subsidiaries regarding crude oil and other hydrocarbons" in the "Republic and abroad." Supp. Br. At 7 (internal quotation marks and citations omitted). PDVSA is not a sham entity, and there is no reason to believe that its corporate structure gives rise to fraud or has been used to defraud creditors or commit similar injustice. *Cf. Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 403 (D. Del. 2018) ("*Crystallex I*") (concluding, in *Bancec* jurisdictional analysis, that "there is not probable cause that giving effect to the separateness of Venezuela and PDVSA would 'work a fraud or injustice'").

### 2.   *Federal common law concerning FSIA immunity does not supplant Delaware law that determines what property is subject to execution*

**a.   *Rule 69(a) has the force of a statute and therefore trumps federal common law.*** Federal common law does not govern a legal issue unless Congress has been "silent on the issue." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015); *see City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313-14 (1981). Thus, "[f]ederal statutes . . . displace federal common law." *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1162 n.8 (3d Cir. 1990).

Under the Rules Enabling Act, Rule 69(a) is binding on the courts—which means that, pursuant to a federal statute, Rule 69(a) itself has the force and effect of a federal statute. *See* 28 U.S.C. § 2072(b); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988) (holding that a Federal Rule of Criminal Procedure, "in every pertinent respect, [is] as binding as any statute duly

8

enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions"); *Bright v. United States*, 603 F.3d 1273, 1279 (Fed. Cir. 2010).

Consequently, federal common law cannot displace Rule 69's express directives. And one of those directives is Rule 69(a)'s mandate that "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a); *see City of Milwaukee*, 451 U.S. at 323 & 324 n.18 (federal common law may fill "interstice[s]" left by statutes, but "disagreement" with statutory law "is no basis for the creation of federal common law"); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993) (declining to "extend the federal common law to discovery motions" when "Rules 5(d) and 26(c) of the Federal Rules of Civil Procedure" govern); *Showan v. Pressdee*, 922 F.3d 1211, 1223 (11th Cir. 2019) (federal rule "governs" so long as it is "sufficiently broad to control the issue before the Court," and "federal common law" applies only where "no Federal Rule answers the question in dispute") (citations omitted)); *see also, e.g.*, *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 100 n.6 (1991) (explaining that issue "is now governed not by a federal common law doctrine of demand but rather by the express terms of Federal Rule of Civil Procedure 23.1"); 28 U.S.C. § 1606.

b. ***Nothing in* Bancec *or in decisions applying* Bancec *says otherwise.*** Nothing in *Bancec* or its progeny displaces the conclusion that Rule 69(a)—and, through operation of that rule, state law—governs proceedings in aid of execution.

In *Bancec*, the Supreme Court did not address attachment or execution. Rule 69(a) played no role in the Court's decision. Rather, the Court decided the substantive law applicable to the question of "whether [an] instrumentality may be held liable for actions taken by the sovereign,"

9

or, put differently, the law "governing the attribution of liability among entities of a foreign state," which is a federal common-law issue that neither the FSIA nor any other federal statute or rule addressed. *Bancec*, 462 U.S. at 621, 622 n. 11 (emphasis omitted). Bancec, an instrumentality of Cuba, filed suit against Citibank seeking to recover funds Citibank refused to return in the wake of Cuba's nationalization of Citibank's assets. *See Banco Nacional de Cuba v. First Nat'l City Bank*, 431 F.2d 394, 395-96 (2d Cir. 1970), *rev'd on other grounds*, 406 U.S. 759 (1972). Citibank counterclaimed for an offset based on the value of the assets Cuba had expropriated from Citibank. Bancec was subsequently dissolved and its claim transferred to Cuba's Ministry of Foreign Trade. *Bancec*, 462 U.S. at 613-16. "Applying principles of equity common to international law and federal common law," the Court "conclude[d] that Citibank may apply a setoff" against Bancec's claim *Id.* at 613; *see id.* at 632, 634. In reaching that conclusion, the Court applied federal common law" because neither the FSIA nor any other federal statute or rule governed the equitable inquiry and because of the "'the importance of developing a uniform body of law' concerning the amenability of a foreign sovereign to suit in United States courts." *Id.* at 622 n.11 (quoting H. R. Rep't No. 94-1487, 32 (1976)); *see also Cassirer*, 142 S. Ct. at 1508 (quoting *Bancec* for the proposition that "the FSIA was never 'intended to affect the substantive law determining the liability of a foreign state or instrumentality' deemed amenable to suit").

Federal courts have subsequently applied *Bancec* to the separate question of whether an entity may be considered the "alter ego" of a state for purposes of establishing *jurisdiction* under the FSIA—again, an issue as to which Rule 69(a) has no relevance. *See, e.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 138 (3d Cir. 2019) ("*Crystallex II*") ("[A]lthough the *Bancec* doctrine came in a case involving the shifting of substantive liability, it also applied to extend a district court's jurisdiction over a foreign sovereign to reach an extensively

10

controlled instrumentality."). Like the equitable liability question addressed in *Bancec*, that particular jurisdictional question is governed by federal common law, because neither Rule 69 nor any federal statute answered the question. *See Crystallex II*, 932 F.3d at 145 ("*Bancec* is binding federal common law for *disputes under the [FSIA]*.") (emphasis added).

Here, the Republic's argument under Rule 69(a) and Delaware law is entirely independent of FSIA jurisdiction or FSIA immunity. The FSIA "simply provides a defense to claims raised against a sovereign and a federal forum for the resolution of such claims." *Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 416 (5th Cir. 2005). The question here is whether, once the forum's FSIA jurisdiction is established and the FSIA immunity is overcome, attachment of PDVSA's property is a remedy Delaware provides (and Rule 69(a) therefore affords) to a judgment creditor of the Republic.

With the sole exception of *OIEG I*—addressed immediately below this paragraph—neither *Bancec* nor any decision applying *Bancec* of which the Republic is aware has treated such a question as one of federal common law, or suggested that federal common law has a role to play in the analysis of the validity of an attachment or other execution-related measure. Nor could they have done so—because applying federal common law to assess the proper procedure on execution and related proceedings contravenes Rule 69(a). *See* pp. 4-5 *supra* (cases applying Rule 69(a) to foreign-sovereign attachment issues). It cannot be that the assets of sovereign-owned corporations are more readily subject to attachment than the assets of non-sovereign-owned corporations, as to which state law would indisputably govern. *See* 28 U.S.C. § 1606.

c. **The Third Circuit has not ruled on the issue.** In *OIEG I*, this Court stated that the Third Circuit "ha[d] previously rejected" the position "that Delaware law applies to this proceeding." *OIEG I,* 2023 WL 2609248, at *29 (citing *Crystallex II*, 932 F.3d at 145). But that

11

is not what the Third Circuit said or did in *Crystallex II*—a conclusion reinforced by the language and reasoning of *OIEG II*.

*Crystallex II* applied *Bancec* to decide a single issue: whether, under the FSIA, PDVSA and its assets were immune from jurisdiction and attachment in the *Crystallex* proceedings. *See* 932 F.3d at 136 (characterizing the principal question on appeal as "whether the Bancec 'alter ego' doctrine determines the District Court's jurisdiction to attach PDVSA's assets"). This Court addressed and decided that jurisdictional question by "us[ing] *Bancec* to extend its jurisdiction to assets held nominally by PDVSA." *Id.*; *see also id.* ("*Bancec* controls the jurisdictional inquiry here."); *id.* at 138 ("The District Court properly used *Bancec* to extend its jurisdiction to assets held nominally by PDVSA."); *id.* ("[T]he District Court's jurisdiction over Venezuela would extend to PDVSA so long as it is Venezuela's alter ego under *Bancec*.").

The jurisdictional question governed by *Bancec* happened to arise in *Crystallex II* in "the post-judgment enforcement setting." 932 F.3d at 138. But the analysis in *Crystallex II* was limited to whether the district court could "exercise post-judgment enforcement *jurisdiction*" in that particular setting. *Id.* (emphasis added); *see id.* at 139. The Third Circuit described the FSIA as a "specialized jurisdictional statute" and the *Bancec* doctrine as "a federal common-law outgrowth of that specialized statute" designed "to avoid the unfair results from a rote application of the immunity provisions" of the FSIA. *Id.*. Nothing in that description suggested that the *Bancec* doctrine would pre-empt state law concerning what property could be reached through attachment and execution where FSIA immunity does not apply.

The Third Circuit had no occasion in *Crystallex II* to address the law that would apply in the event that jurisdiction were established, FSIA immunity were overcome, and execution proceedings were undertaken. Neither side had presented that issue there. Indeed, Crystallex had

12

expressly represented that "'PDVSA may, of course, seek to challenge the writ on non-jurisdictional grounds by a motion to quash brought after the writ has issued and before the Court allows the execution process to commence.'" *Crystallex I*, 333 F. Supp. 3d at 425 (quoting correspondence from Crystallex's counsel to the Court). Not surprisingly, then, the Third Circuit never decided what source of law governs whether an attachment may issue as to a non-immune party over which the district court has jurisdiction.

Moreover, *Crystallex III* and *OIEG II* make clear that the *Crystallex II* panel did not have jurisdiction to decide that issue. In *Crystallex III*, the Third Circuit held that, under the practical finality test, this Court's denial of the Venezuela Parties' motion to quash Crystallex's attachment under Rule 69 was not a final decision under 28 U.S.C. § 1291, because this Court's judicial role was not yet over merely because it had issued a writ of attachment, as it still had to supervise the sale of the shares, a task that would involve more than merely ministerial tasks for the Court to decide. 24 F.4th at 255; *see also id.* at 249 (holding that "an attachment in aid of execution, or a refusal to quash one, is final when "all that remains is for a non-judicial officer to take and dispose of the defendant's property"). Nor, the Third Circuit held, was this Court's decision reviewable under the collateral order doctrine. *Id.* at 256. And in *OIEG II*, the Third Circuit held that this Court's decision to apply *Bancec* to the substantive attachability inquiry was neither a final decision nor available for review in an interlocutory appeal of this Court's denial of PDVSA's immunity under the pendent appellate jurisdiction doctrine. *See* 2023 WL 4385930, at *11, 12.

*OIEG II* also reinforces the conclusion that federal common law does not supplant Delaware's requirements for execution based on an alter ego argument. There, the Third Circuit wrote that in *Crystallex II*, it had "affirmed the order permitting attachment of PDVSA's shares *under the FSIA*." *OIEG II*, 2023 WL 4385930, at *2 (emphasis added). Far from endorsing the

13

plaintiffs' argument that the *Bancec* test supplants state alter ego law in determining what property may be reached in proceedings under Rule 69(a), the Third Circuit reiterated that the *Bancec* test was a specialized test for a specialized purpose, "derive[d] from a *rough analogy* to American corporate law veil piercing," and evolved after "governments began analyzing *sovereign immunity claims* through this corporate lens." *Id.* at *6 and n. 15 (emphasis added). Reasoning that "[r]esolution of the immunity issue does not dictate the outcome of the attachment issue," the Third Circuit declined to review whether this Court erred when it "invoked *Bancec* to evaluate whether PDVSA's property can be attached to pay out a judgment." *Id*. at *12. This reasoning refutes the assumption that the statement in *Crystallex II* that *Bancec* is "binding federal common law for disputes under the [FSIA]" (932 F.3d at 145) extended beyond FSIA immunity and expanded a judgment creditor's rights beyond those provided by Delaware law.

### B. The Republic reserves its arguments on appeal under the FSIA

The Republic believes the Third Circuit erred in *OIEG II*, including in its statements concerning the pertinent time period and its treatment of the acts of the illegitimate Maduro regime up to the present as if those were acts of the "sovereign." The Republic will be seeking review of that decision. The Republic reserves its arguments under the FSIA, presented in its original opposition papers,[4] and expressly reserves its right to appeal a ruling in the present case denying FSIA immunity and to assert that immunity after any reversal, modification or overruling of *OIEG II*.

---

[4] *See* the Republic's Memorandum of Law in Opposition to Plaintiffs' Motion and evidence cited therein (D.I. 13-16).

## II. Tidewater Should Not Be Added As An Additional Judgment Creditor

The Republic incorporates by reference the briefs of the Venezuela Parties submitted in response to the May 10 Order,[5] and the arguments presented at the conference held pursuant to the May 10 Order on June 27, 2023.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, C.A. No. 17-mc-151-LPS, D.I. 571, 589, 610.

## CONCLUSION

For each of the reasons set forth above, the Republic respectfully urges the Court to deny Tidewater's motion for a writ of attachment and decline to add Tidewater as an Additional Judgment Creditor.

Dated:  July 21, 2023

OF COUNSEL:

Donald B. Verrilli, Jr.
Elaine J. Goldenberg
Ginger D. Anders
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500 E
Washington, D.C. 20001
(202) 220-1100
Donald.Verrilli@mto.com
Elaine.Goldenberg@mto.com
Ginger.Anders@mto.com

George M. Garvey
Adeel Motamedi
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
(213) 683-9100
George.Garvey@mto.com
Adeel.Motamedi@mto.com

Respectfully submitted,

*/s/ Stephen C. Childs*
A. Thompson Bayliss (#4379)
Stephen C. Childs (#6711)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807
(302) 778-1000
bayliss@abramsbayliss.com
childs@abramsbayliss.com

*Attorneys for Bolivarian Republic of Venezuela*

---

[5] Childs Dec., Exhibits 3, 4 and 5.

15